**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**
**CIVIL ACTION NO. 07-443-DLB**

**TAMARA R. ASBERRY,**                                                      **PLAINTIFF**

**vs.**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**                                   **DEFENDANT**

**REPORT AND RECOMMENDATION**

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of an administrative decision by the Commissioner of Social Security.  The

matter has been referred to the undersigned for initial consideration and a report and

recommendation.  *See* 28 U.S.C. § 636(b).  At issue is whether the Administrative Law Judge

(hereinafter "ALJ") erred in finding the plaintiff "not disabled" and, therefore, not entitled to

Disability Insurance Benefits.  I find no error which would necessitate remand in this case, and

therefore recommend granting the Commissioner's motion and denying the plaintiff's motion for

summary judgment.

**I.  Standard of Review**

The Social Security Administration (hereinafter "SSA") has established a five-step

sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. §

404.1520(a).  If at any step, the ALJ finds that the individual is not disabled, he makes his

determination and does not go on to the next step.  20 C.F.R. § 404.1520(a)(4).  At Step 1, the

ALJ considers the individual's current work activity; at Step 2, the ALJ considers the medical

severity and duration of the impairment; at Step 3, the ALJ considers whether the impairment

meets or equals one of the listings in Appendix 1 of the subpart; at Step 4, the ALJ considers the residual function capacity and past relevant work; and at Step 5, the ALJ assesses the individual's residual function capacity to see if he can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(I) to (v).

This Court's review of the Commissioner's decision is limited to an inquiry as to whether the ALJ's application of the sequential test (resulting in a denial of disability benefits) was supported by substantial evidence. 42 U.S.C. 405(g); *accord Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *accord Cutlip v. Secretary of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). The Court may not try the case *de novo,* nor resolve conflicts in the evidence nor decide questions of credibility. *See Bradley v. Secretary of Health and Human Services,* 862 F.2d 1224, 1228 (6th Cir. 1988). The Commissioner's decision must be affirmed if it supported by substantial evidence, even though the Court might have decided the case differently. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

## II.  Facts and Procedural History

Plaintiff Tamara Asberry protectively applied for Supplemental Security Income on April 8, 2005. The claim was denied initially and upon reconsideration. Plaintiff requested a hearing at which she was represented by counsel. On March 12, 2007, an Administrative Law Judge (ALJ) issued a hearing decision denying her claim. (Tr. 16-21.) On November 8, 2007 the Appeals Council denied review, making the ALJ's decision the final decision of the

2

Commissioner.  (Tr. 5-7).  Plaintiff next filed her appeal of the adverse decision to this federal district court pursuant to 42 U.S.C. § 405(g).

The plaintiff was 44 years old at the time of the ALJ's last decision.[1]  Ms. Asberry has a general equivalency diploma (GED) and has never worked.  She alleges disability beginning on August 1, 1997 due to asthma, "bad nerves" and right knee pain. (Tr. 60-61).

After considering the evidence of record, the ALJ found that plaintiff has the following severe impairments: asthma, sleep apnea, depression, and shingles.  TR 18, Finding No. 2.  The ALJ found that plaintiff's mental impairments resulted only in "mild restrictions in daily living, mild difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, and pace."  TR. 18, Finding No. 3.  He determined that plaintiff could perform a significant range of work requiring the residual functional capacity (RFC) to lift 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and needing to avoid dust, fumes, chemicals and hazards.  (Tr. 18, Finding No. 4).  The ALJ concluded, based on Vocational Expert (VE) testimony, that plaintiff could perform a significant number of jobs in the state and national economies.  (Tr. 21, Finding No. 9).   Accordingly, the ALJ found plaintiff was not disabled.  (Tr. 21, Finding No. 9).

Plaintiff Asberry now argues that the ALJ erred by disregarding her treating physician's opinions concerning the severity of her mental impairments and/or her resulting functional limitations.

---

[1]Both plaintiff and defendant represent that plaintiff was 44 years of age the time her application was filed on April 8, 2005.  The record reflects that plaintiff was born on September 26, 1962, which would have made her 42 at the time of her application.  To add to the confusion, the ALJ's opinion in Finding No. 6 states that plaintiff was 34 years of age.  The apparent typographical error is not material since a "younger individual" is defined as someone with the age range of 18-44.

3

### III.  ANALYSIS

#### A.  Rejection of Treating Physician's Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Syed Raza, her treating psychiatrist, in favor of non-treating consultants who opined that plaintiff's mental impairments did not result in more than mild limitations in job-related activities.

#### 1.  Records Concerning Plaintiff's Mental Impairment

Plaintiff first sought treatment at the Cumberland River Comprehensive Care Center on April 18, 2005 and was referred to Dr. Raza for a psychiatric examination which took place on June 14, 2005.  TR 146.  Dr. Raza diagnosed the plaintiff with Anxiety Disorder, NOS and noted that the plaintiff reported "high anxiety."  Dr. Raza prescribed Zoloft and Doxepin and advised plaintiff to follow up with psychotherapy.  TR 146-147.  Plaintiff periodically returned to Dr. Raza for follow-up medication management. TR 145, 192.

In addition to seeing Dr. Raza for medical management, plaintiff periodically attended psychotherapy counseling and visited her general treating physician, Dr. Almusaddy.  Records from those visits reflect some improvement in plaintiff's condition.  For example, on August 3, 2005, Dr. Almusaddy's progress note reflects "Pt is doing well on Zoloft and Advair, we will continue."  TR 133.  On January 12, 2006 Dr. Almusaddy increased plaintiff's Zoloft, noting that she "[s]eems to be doing okay except for anxiety that has not been under good control."  TR 130.  On January 19, 2006 plaintiff's therapist noted that the increase in Zoloft appeared to have been effective since plaintiff reported "she can really tell a good difference on it."  TR 141.  On February 15, 2006, Dr. Almusaddy again noted "[a]nxiety **doing well** on Zoloft."  TR 199 (emphasis added).  The ALJ specifically relied on the medical records from Dr. Almusaddy, plaintiff's primary care physician, in finding plaintiff's anxiety not to be disabling.  TR. 19.

4

On July 27, 2006, Dr. Raza also noted that plaintiff was showing a "partial response" to her ongoing treatment.  TR 200.   However, records reflect that plaintiff's mental health deteriorated for a brief period approximately a month later.  On August 29, 2006, Dr. Raza's progress note reflects that plaintiff was referred to a crisis stabilization (residential) unit.  TR 223.   On September 6, 2006 Dr. Raza's note reflects the need for continued psychiatric and psychological treatment including therapy although at that point she had been stabilized on her medications and discharged from the crisis stabilization unit.  TR 225.  A progress note from the crisis stabilization unit dated September 5, 2006 reflects that the plaintiff was feeling "much better" and that her anxiety and depression symptoms had decreased significantly.  TR 242.

Plaintiff argues that the ALJ improperly rejected the conclusions of Dr. Raza in a consultative psychiatric report dated September 9, 2006, shortly after plaintiff's discharge from the crisis stabilization unit.  That report, prepared at the request of plaintiff's attorney, notes that the plaintiff was anxious and tearful during her evaluation, but also that her speech was "normal and congruent." TR 201.   Dr. Raza further reports that plaintiff "can do virtually almost all the household chores...can utilize public transportation, postal service, budgeting, grooming and hygiene."  TR 203.  The report states that plaintiff has a "poor" ability to relate to others, apparently based upon plaintiff's report that she did not interact with friends or neighbors because she does not trust them.  TR 203.  Despite this "poor" ability, Dr. Raza rated her as having a "fair" ability to make decisions,  complete tasks and interact with supervisors/peers.  TR 203.  The September 9, 2006 record also reflects that plaintiff "struggles with suicidal thoughts and thoughts of self harm," and includes a new diagnosis of Post Traumatic Stress Disorder ("PTSD") based upon prior abuse.  TR 203-204.

Importantly for purposes of this proceeding, Dr. Raza's September 2006 report includes

5

an assessment of plaintiff's functional abilities.  Dr. Raza opines that plaintiff retains a "fair"

ability to understand and remember simple instructions, and that her ability to sustain

concentration and persistence is "fair enough" to complete tasks in a normal amount of time.

However, he found plaintiff to have "poor social interaction with friends, supervisors and

public," and "poor coping skills,"responding  "abnormally" to pressures.  TR 203-205.  Finally,

he assessed her "current GAF" (Global Assessment of Functioning) at 60 even though the same

section of the same report reflects an overall GAF of 65. TR 204.

Just three months later in December 2006, plaintiff presented to a community clinic in

order to establish a new primary care provider.  At that time plaintiff reported that "she is feeling

well and has no complaints at this time," despite a continuity of treatment with Dr. Raza for

depression.  TR 208.

On January 12, 2007, plaintiff was seen at a follow-up appointment by Dr. Raza and

reported improvement with recent medication changes, that her "anxiety is improved" and that

she was able to "sleep better."  TR 215.   At a March 9, 2007 medication review, Dr. Raza

prescribed Remeron in order to help plaintiff with anxiety, depression and sleep, in addition to

the Zoloft and Vistaril previously prescribed.  Dr. Raza also advised her to follow up with

therapy and to return in a month or sooner if needed.  TR 212, 238.

In addition to records by treating physicians Raza and Almusaddy, relevant records

include four consultative evaluations, two of which were given "significant weight" by the ALJ.

First, on July 21, 2005, plaintiff underwent psychometric testing by Phil Pack, M.S.  TR 121-

122.  Mr. Pack found that plaintiff did not exhibit "acute symptoms of anxiety or depression,"

and diagnosed her with Anxiety Disorder NOS and Alcohol Dependency in Remission.  He

opined that she has a good ability to understand, retain and follow instructions, to sustain

6

attention to perform repetitive tasks and to relate to others, including fellow workers and supervisors.  Her ability to adapt to the stress and pressure of day-to-day work activity was characterized as fair.  TR at 120-125.   As the ALJ found, Mr. Pack's report reflects that plaintiff did not have "any significant deficits that would impair her ability to function in a day-to-day fashion," and that although she presented with anxiety, she "apparently had some situational stressors."  TR 19-20.  The ALJ gave "significant weight" to Mr. Pack's assessment, on the basis that the opinion was "consistent with the record when considered in its entirety."

In addition to the report of Mr. Pack, Ed Ross, Ph.D., completed a psychiatric review technique (PRT) form on August 25, 2005.  Dr. Ross also placed only mild limitations on plaintiff's functional abilities and concluded that her mental impairment was not severe.  TR 176-185.  A third similar assessment was made by Edward Stodola, Ph.D on October 7, 2005. TR 160-173.

Finally, Dr. Bradley Scott Rice, a consulting physician, examined plaintiff on July 16, 2005.  At that time and considering the plaintiff's history, physical examination findings and ancillary data,  Dr. Rice found plaintiff had only a "mild level of limitation in activities of daily living and a mild level of limitation in job-related activities, specifically related to depression and anxiety."  TR 118.  He recommended that plaintiff continue care with her treating physician including continuing on her antidepressant medications, "which the patient has reported has helped."  TR 119.   Like the opinion of Mr. Pack, the ALJ gave "significant weight" to the opinion of Dr. Rice as "consistent with the records when considered in its entirety."

## 2. The ALJ's Rejection of Dr. Raza's functional assessment

 The ALJ issued his decision on March 12, 2007, concluding that plaintiff had no occupational limitations associated with her mental impairments. Plaintiff argues that the ALJ

7

erred by failing to give Dr. Raza's September 9, 2006 assessment of her functional abilities controlling weight. Plaintiff also complains that the ALJ failed to adequately articulate the reasons for rejecting Dr. Raza's opinion.

A treating physician's opinion must be given controlling weight if it is "well supported by the medical acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial medical and nonmedical evidence of record." See SSR 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A court may remand the Commissioner's decision when he has failed to articulate "good reasons" for not crediting the opinion of a treating physician, as required by § 1527(d)(2). *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d at 546-47 (citing 20 C.F.R. § 404.1527(d)(2) (2008)). A decision of the Commissioner will not be upheld, even if it is supported by substantial evidence, where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits. *Id.* at 544.

As the Sixth Circuit explained in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007):

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions, the specialization of the physician; and any other relevant factors. *Id.* However, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.

An ALJ must provide "good reasons" for discounting a treating physician's opinion, "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (further citation omitted). "[A] failure to follow the procedural requirement of identifying the reasons for

8

discounting the opinions and for explaining precisely how those reasons affected the weight

accorded the opinions denotes a lack of substantial evidence, even where the conclusions of the

ALJ may be justified based upon the record." *Id.* at 243.

In this case, the ALJ's report discusses Dr. Raza's opinions and his rejection of some of

Dr. Raza's conclusions regarding plaintiff's functional abilities as follows:

> Dr. Raza... saw the claimant for a psychiatric consultative examination on September 9,
> 2006. The claimant presented with complaints of depression and anxiety for
> several years, and breathing problems. Dr. Raza diagnosed the claimant
> with...(PTSD), asthma, and a history of shingles. Dr. Raza opined that the
> claimant had a fair understanding and remembering simple one and two step
> instructions and sustained concentration and persistence which was fair enough to
> complete tasks in a normal amount of time. She had poor social interaction with
> friends, supervisors, and the public. Dr. Raza said she had been struggling with
> her PTSD symptoms, and showed a partial response to pharmacotherapy,
> individual psychotherapy, and psychiatric therapeutic rehabilitation program. Dr.
> Raza also noted the claimant had very poor coping skills and responded to
> pressure poorly....
>
> ....In accordance with SSR 96-2p, the undersigned has considered and gives little weight
> to Dr. Raza's opinion, as the clamant's treating physician. The undersigned notes
> that Dr. Raza's opinion is inconsistent with laboratory and clinical findings and it
> is inconsistent with the record when considered in its entirety.
>
> TR at 20.

Immediately prior to this discussion of Dr. Raza's opinion is the ALJ's discussion of his

reasons for giving "significant weight" to two opinions of consulting examiners (Pack and Rice),

and the ALJ's explanation of why he discounted plaintiff's own testimony regarding her

functional limitations and activities of daily living as inconsistent with the "longitudinal medical

evidence of record." For example, although plaintiff claimed disability since August 1, 1997,

she sought no medical treatment at all until April 19, 2005. The record contains numerous

progress notes that plaintiff's mental status improved significantly with treatment, including

demonstrable improvement following Dr. Raza's more restrictive September 2006 assessment.

See TR at 199 (Almusaddy), TR at 242 (Raza).

When viewed as a whole, the ALJ's opinion sufficiently explains the basis for his rejection of some of the conclusions of Dr. Raza in the September 2006 report (inconsistencies), as well as the basis for his according more weight to the consulting examiners' assessment of plaintiff's functional abilities. A review of the September 9, 2006 report shows it to be internally inconsistent as well as inconsistent with other medical records such as the subsequent progress notes of Dr. Raza. As one example of internal inconsistency, the September 9, 2006 report reflects no limitations on daily functional activities, "partial" improvement from psychotherapy and medications, and "fair" abilities to remember simple instructions and maintain concentration and persistence.[2] The only "poor" rating given by Dr. Raza in the 9/9/06 report, generally defined as "seriously limited but not precluded" concerned plaintiff's "social interaction with friends, supervisors and public." However, in another section of the same report Dr. Raza describes plaintiff as "fair" in her "interaction with supervisors/peers. TR 203.

Similarly, while Dr. Raza indicates a "current" GAF score of 60, the same section of the report appears to reflect plaintiff's overall GAF as 65. The difference is significant; a score of 65 suggests "mild symptoms" and "some difficulty in social, occupational or school functioning...but generally functioning pretty well" whereas a GAF score of 60 reflects "moderate symptoms" and "moderate difficulty in social [and] occupational... functioning." Both an overall score of 65 and a score of 60 are inconsistent with a "poor" rating on social functioning. *Accord Nelson* v. *Commissioner of Social Security,* 195 Fed.Appx. 462, 472 (6th Cir. 2006) (noting that GAF of 52 was inconsistent with poor rating on social functioning). The

_____

[2]While not specifically defined in the report, "fair" abilities are generally defined as "limited but satisfactory" skills.

10

ALJ discussed the fact that objective and clinical findings were inconsistent with the more severe functional impairments assessed by Dr. Raza and discussed the contrary opinions of consulting examiners who found no functional impairments.

There is no doubt that the ALJ's explanation for rejecting the restrictions suggested by a portion of Dr. Raza's functional assessment might have been better articulated. The ALJ's conclusion that Dr. Raza's entire opinion is "inconsistent" with clinical findings and with the record as a whole, while accurate, lacks the degree of detail which the regulations are designed to elicit. In truth, the ALJ's assessment is consistent with the bulk of Dr. Raza's 9/9/06 report to the extent that Dr. Raza's report included an overall assessed GAF score of 65, no restrictions in daily activities and "fair" abilities in "decision-making, scheduling, ..attendance, completing tasks, and interaction with supervisors/peers," as well as "fair" abilities "to sustain attention and pace" and "to permit timely completion of tasks and everyday household routines." Though more spartan than is preferable, the ALJ's opinion in this case does not technically violate the notice requirement and require remand.

### 3. Alternative Analysis

Even if an ALJ has not articulated any good reasons for rejecting the opinion of a treating physician, remand and reversal may not be required if the violation has only been *de minimis.* *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 547 (6th Cir. 2004). In this case, I would alternatively conclude that the Commissioner met the goal of § 1527(d)(2) even if his articulation of the reasons for discrediting Dr. Raza's functional assessment of plaintiff's mental impairment was less than ideal. *See Nelson v. Commissioner of Social Security,* 195 Fed.Appx. at 472 (per curiam)(holding that the ALJ's failure to abide by the letter of § 1527(d)(2) amounted to harmless error). The ALJ discounted Dr. Raza's opinion immediately after

11

discussing his assessment of plaintiff's credibility and contrary medical evidence, including the opinion of treating physician Almusaddy and consultants Pack and Rice. Thus, by both directly and indirectly attacking the opinion of the treating physician, the ALJ satisfied the goal of the regulation.

### B. The Testimony of the Vocational Expert

The ALJ accurately conveyed all of Ms. Asberry's limitations to the vocational expert, VE Katherine Bradford. In response, VE Bradford opined that Asberry could perform jobs such as production laborer or machine tender. VE Bradford further indicated that these potential jobs were representative and not exhaustive. (Tr. 292-293). Generally, a vocational expert's testimony in response to a hypothetical question accurately portraying the claimant's physical and mental impairments provides substantial evidence in support of the Commissioner's decision that the claimant is not disabled. *Davis v. Secretary of Health and Human Services,* 915 F.2d 186, 189 (6th Cir. 1987). Therefore, VE Bradford's testimony provides substantial evidence in support of the Commissioner's decision that Asberry is "not disabled."

### IV. Conclusion and Recommendation

I conclude that the ALJ's decision is supported by substantial evidence, and that he adequately explained his reasons for discounting the opinion of one of plaintiff's two treating physicians with regard to limitations resulting from plaintiff's mental impairment. Alternatively, I conclude that any failure to fully comply with the letter of the§ 1527(d)(2) notice requirements was *de minimis* in this case. Having found that the ALJ's analysis is supported by substantial evidence, and having determined that defendant has satisfied the elements for summary judgment, the undersigned magistrate judge **RECOMMENDS** that the Commissioner's motion for summary judgment [Doc. 10] be **granted,** that plaintiff's motion for summary judgment

12

[Doc. 9] be **denied**, and that this case be dismissed from the active docket.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service or further appeal is waived. *U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)).   Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within ten days of being served with a copy of those objections.  Fed. R. Civ. P. 72(b)(2).

This the 22nd day of August, 2008.

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge

13